UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VOLUNTEER ENERGY SERVICES, INC.,

    Plaintiff,

v.

OPTION ENERGY, LLC, et al.,

    Defendants.
    _____/

File No. 1:11-CV-554

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This diversity breach of contract action is before the Court on Defendants' motion to dissolve the preliminary injunction (Dkt. No. 81), Plaintiff's motion for contempt (Dkt. No. 119), and Plaintiff's motion for sanctions (Dkt. No. 126). For the reasons that follow, Defendants' motion to dissolve the preliminary injunction will be granted, Plaintiff's motion for contempt will be denied, and Plaintiff's motion for sanctions will be taken under advisement.

### I.

On July 29, 2011, this Court entered an order preliminarily enjoining Defendants from "soliciting or attempting to solicit any customer who receives natural gas from Volunteer Energy until further order of this Court." (Dkt. No. 25.) On April 26, 2012, Defendants moved to dissolve the preliminary injunction based on the expiration of the non-solicitation clause. Volunteer opposes Defendants' motion and has also filed a motion for contempt.

Volunteer contends that Defendants have continued to solicit Volunteer customers in violation of the preliminary injunction. In support of this contention Volunteer references Option Agent Anna Simonian's communications regarding Volunteer customer Hammond Roto in January 12, 2012, and Defendant Ivan Pillars's communications regarding Volunteer customer Humphrey Products in May 2012. Volunteer contends that Defendants should be held in contempt of court, and enjoined from soliciting Volunteer customers for an additional twelve months to compensate Volunteer for its costs in presenting this motion for contempt.

"The movant in a civil contempt proceeding bears the burden of proving by clear and convincing evidence that the respondent 'violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (quoting *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991)). Ambiguities in the order allegedly violated must be resolved in favor of the party charged with contempt. *Id.* at 551 (citing *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)).

The only evidence Volunteer has produced with respect to Option's alleged solicitation of Hammond Roto is Simonian's affidavit. Simonian states that she began consulting with Hammond Roto about gas and electricity options in early 2011, before the preliminary injunction was issued. (Simonian Aff. ¶¶ 4-5.) Upon receiving instructions to cease soliciting Volunteer's gas customers, she stopped discussing alternative gas suppliers with Hammond Roto, but continued to consult with Hammond Roto regarding alternative electricity suppliers. (*Id.* at ¶ 6.) In January 2012 Agent Simonian sent an email to Integrys

advising that Hammond Roto might be a good candidate for Integrys' program. (Simonian Aff. ¶ 7.) However, Simonian denies making any attempt to convince, suggest or otherwise solicit Hammond Roto to switch gas suppliers. (*Id.* at ¶ 8.)

There is no evidence that Simonian directly solicited Hammond to switch gas suppliers. The fact that Simonian consulted with Hammond about alternative electricity suppliers and suggested to Integrys that Hammond might be a good candidate for Integrys's gas program is not clear and convincing evidence that Simonian violated a definite and specific order of the court. The preliminary injunction is ambiguous at best with respect to such conduct, and must be resolved in favor of Option, the party charged with contempt.

Scott Ludwig, the Facility Manager for Humphrey Products, a Volunteer natural gas customer, states in his affidavit that he received numerous telephone calls from Pillars "for the purpose of switching from Volunteer to another Alternative Gas Supplier." (Ludwig Aff. ¶ 4.) Ludwig states that "When I indicated I was pleased with Volunteer, Mr. Pillars indicated that he had previously worked with Volunteer but he terminated that relationship because Volunteer was an unethical company that wouldn't do right by their customers." (*Id.* at ¶ 6.) He also states that "Mr. Pillars presented me with a blank contract in favor of Option Energy and pressured me to sign it." (Ludwig Aff. ¶ 7.) Defendant Pillars states in his affidavit that he did not know Humphrey was a Volunteer gas customer when he approached him about switching to Option. (Pillars Aff. 5.) When Pillars learned that Humphrey was a Volunteer gas customer, he indicated that Option no longer works with Volunteer, and he has undertaken nor further efforts to solicit Humphrey. (Pillars Aff. ¶ 6.)

3

Volunteer did not supply Option with a list of Volunteer gas customers, and Volunteer has not challenged Pillars's statement that he did not know that Humphrey was a Volunteer gas customer when he solicited Humphrey. Whether making negative statements about Volunteer constitutes "soliciting or attempting to solicit" a customer is ambiguous at best and must be resolved in favor of Option.

The Court concludes that Volunteer has not come forward with clear and convincing evidence that Defendants violated a definite and specific order of the court. Accordingly, Volunteer's motion for contempt will be denied. This brings the Court back to Option's motion to dissolve the preliminary injunction.

The preliminary injunction was designed to enforce the Agent Agreement's non-solicitation provision. (Dkt. No. 24, Op. 13.) There is no dispute that the Agent Agreement terminated on April 21, 2011, nor is there any dispute that the non-competition clause was scheduled o expire one year later, on April 21, 2012. Option contends that because the non-solicitation clause has expired on its own terms, the preliminary injunction should be dissolved. Volunteer contends that in order to enable it to obtain the benefits it bargained for, the one-year non-solicitation period should not begin to run until Option stops soliciting Volunteer customers. Volunteer relies on *B.W. Rogers Co. v. Wells Bros., Inc.*, No. 17-11-25, 2012 WL 605519 (Ohio Ct. App. Feb. 28, 2012), in support of this argument.

In *B.W. Rogers* the parties entered into a two year non-compete agreement, but there was a two year delay before the issue of the customers covered by the non-compete agreement was resolved at trial. *Id.* at *11. In light of the delay, the trial court found that the

4

provisions had not yet begun, and the distributor had not yet received the benefits it had negotiated for. The trial court accordingly ordered the term of the non-compete agreement to commence at the conclusion of the trial. The decision was affirmed on appeal. *Id.* at *12.

*B.W. Rogers* does not suggest that every breach of a restrictive covenant should result in its extension. *B.W. Rogers* permits an extension of a restrictive covenant where the original covenant did not go into effect, and one party has not obtained the benefit of its bargain. Unlike the situation in *B.W. Rogers*, the non-solicitation clause in this case did go into effect and was enforced by the Court's preliminary injunction. In view of the parties' dispute as to the meaning of the non-solicitation clause, this Court could, consistent with *B.W. Rogers*, begin the running of the non-solicitation clause from July 29, 2011, the date the preliminary injunction was entered. However, even under that approach, the one-year non-solicitation period has expired. The non-solicitation clause expired either by its on terms on April 21, 2012, or, at the latest, on July 29, 2012. Volunteer has received the benefit of the non-solicitation clause for the full term it negotiated in the Agent Agreement. The preliminary injunction is no longer necessary to enforce the non-solicitation clause. The Court will accordingly grant Option's motion and dissolve the preliminary injunction.

## II.

On May 1, 2012,[1] Volunteer filed a motion for sanctions based on Defendants' alleged failure to comply with the Court's order compelling production of documents. Specifically,

---

[1] Volunteer's motion for sanctions is deemed filed as of the date Volunteer's motion for leave to file in excess of page limitations was filed. *See* (Dkt. Nos. 89, 126.)

Volunteer asserts that Defendants have failed to produce certain emails.

The Magistrate Judge's discovery order required Defendants to produce all emails between Defendants and Integrys from January 1, 2010, to the present, involving any of six listed categories of information, and all internal emails referring to Option's agency agreement with Volunteer, including emails sent to or from any personal email account of the individual defendants. (Dkt. No. 69, Disc. Order.) Volunteer contends that Defendants, in violation of the discovery order, failed to produce (1) emails from Simonian's inbox and sent folders from prior to 2012; (2) emails from the sent folders of Rockwood, Schmiege, Gunia, Moss, McDaniel, and Gonzalez; (3) emails from the inboxes or sent folders of Lanphear, Cramer, Cook, and Pillars; and (4) emails from Pillars's and Rockwood's personal email accounts. (Dkt. No. 89, Brown Aff. ¶¶ 10, 12.)

In response, Defendants contend that the deficiencies identified by Volunteer are demonstrably false. Defendants contend that the documents they produced include (1) Simonian emails from prior to 2012; (2) emails sent by Rockwood, Schmiege, Gunia, Moss, McDaniel, and Gonzalez; (3) emails to or from Lamphear, Cramer and Pillars; and (4) emails from Rockwood's personal email account. Defendants further contend that Pillars does not have a personal email account.

Defendants' response is not responsive to Volunteer's assertion that Defendants failed to produce certain categories of emails. As Volunteer notes in its reply brief, each of the emails Defendants have attached to their response are emails found in Rockwood's inbox because the email was sent to him or he was cc'd on the email. The fact that Defendants

6

disclosed **some** of Simonian's emails from prior to 2012 that were located in Rockwood's inbox does not suggest that **other** relevant emails might not be found in Simonian's inbox or sent folders from prior to 2012. The fact that Defendants disclosed **some** emails sent by Rockwood, Schmiege, Gunia, Moss, McDanial and Gonzalez that were located in Rockwood's inbox does not suggest that **other** relevant emails might not be found in those individuals' sent folders. These individuals might very well have sent relevant emails regarding Volunteer, disputed customers, or Integrys that were not cc'd to Rockwood. Defendants' response to Volunteer's motion for sanctions simply does not assure this Court that Defendants have produced all relevant emails.

The Court will take the motion for discovery sanctions under advisement. Defendants are directed to review their response to the discovery order and to supplement their production, if necessary. The Court will review Volunteer's motion for sanctions at the final pretrial conference and will determine, at that time, whether sanctions are in order.

An order consistent with this opinion will be entered.


Date:  August 20, 2012                     /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE