UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VOLUNTEER ENERGY SERVICES, INC.,

        Plaintiff,

                                        File No.  1:11-CV-554

v.

                                        HON. ROBERT HOLMES BELL

OPTION ENERGY, LLC, et al.,

        Defendants.

_____/

## O P I N I O N

This matter is before the Court on Defendant Option Energy, LLC's ("Option") motion to amend judgment pursuant to Fed. R. Civ. P. 59(e), motion to stay enforcement of judgment, and motion for leave to file a reply brief.  (Dkt. Nos. 159, 160, 168.)  For the reasons that follow, the motion to amend judgment will be granted in part and denied in part, the motion  for leave to file a reply brief will be granted, and the motion to stay enforcement of judgment will be denied as moot.

### I.

Following a non-jury trial, this Court entered judgment in favor of Volunteer Energy Services, Inc., ("Volunteer") and against Defendant Option in the amount of $509,000; judgment of no cause of action in favor of Defendant Jonathan Rockwood; and judgment in the amount of $159,000, together with reasonable attorney's fees and court costs in favor of Counter-Plaintiff Option and against Counter-Defendant Volunteer.  (Dkt. No. 154, Am. J.)

Option has filed a motion to amend judgment and a motion for leave to file a reply to Volunteer's memorandum in opposition. (Dkt. No. 168.) Volunteer opposes the motion for leave to file a reply based on its contention that the reply merely reiterates the same arguments previously raised. (Dkt. No. 169.) Because it appears that Volunteer will not be prejudiced by the filing of the reply, the motion for leave to file a reply will be granted.

Option's motion to amend judgment is based on its contention that the award of damages in favor of Volunteer is not supported by any evidence and is clearly erroneous, and that the relief granted to Option on its counterclaim is incomplete. "[A] district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551-52 (6th Cir. 2012) (citing *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)).

## A. VOLUNTEER'S DAMAGES

Option contends Volunteer failed to meet its burden of proving lost profits with reasonable certainty as required by Ohio law. Option contends that because the award of damages is not supported by the evidence, entry of anything more than nominal damages on behalf of Volunteer constitutes a clear error of law.

At trial, Volunteer presented the testimony of Shawn Hall, Volunteer's regional manager for the State of Michigan. Mr. Hall testified that he obtained from Integrys a list of former Volunteer customers that had switched to Integrys and on whose accounts Option

was receiving a commission from Integrys . (Dkt. No. 155, Trial Tr. 94.) Mr. Hall testified that the total annual load for the list of disputed customers was 485,493.8 mcf. (Tr. 95.) He testified that Volunteer's profit margin for these customers was $1.20 per mcf, and that the total profit margin that Volunteer would have earned on these disputed customers, after subtracting commissions of $72,823.95 ($.15 per mcf) that Option would have been paid, was $509,768.61. (Tr. 96.)

Under Ohio law, "in order for a plaintiff to recover lost profits in a breach of contract action the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty." *City of Gahanna v. Eastgate Props., Inc*., 521 N.E.2d 814, 818 (Ohio 1988). "There must be more than a conclusory statement as to the amount of lost profits. An explanation of how that sum was determined is required. Lost profits must be substantiated by calculations based on facts available or in evidence, otherwise they are speculative and uncertain." *Rhodes v. Rhodes Indus., Inc*., 595 N.E.2d 441, 448 (Ohio Ct. App. 1991) (citations omitted).

Option contends that this case is factually similar to *Kinetico, Inc. v. Independent Ohio Nail Co.*, 482 N.E.2d 1345 (Ohio App. 1984), where the court of appeals reversed and remanded for a new trial on damages because the evidence was insufficient to support a claim for lost profits. The *Kinetico* court noted that the plaintiff's evidence regarding lost profits was speculative, conclusory, and not based on personal knowledge. *Id*. at 1349. Option contends that Volunteer's evidence of lost profits, like the evidence in *Kinetico*, was

insufficient because it was based on Shawn Hall's conclusory and unsupported statements as to the annual load of gas purchased by the customers switched by Option and his conclusory and unsupported statement that Volunteer would earn $1.20 per mcf profit on this gas.

In reversing the award of damages for lost profits in *Kinetico*, the Ohio Court of Appeals noted that the evidence of lost sales was based on projected sales in new territories, rather than on historical evidence, and that the testimony of the plaintiff's damages witness regarding these lost sales was not based on personal knowledge. 482 N.E.2d at 1349. Moreover, on cross-examination, the witness admitted that the figure he had described as "net margin or net profit" was not the profit per unit, and that the profit per unit would be a very small portion of the margin on the unit. *Id.* The court of appeals noted that the witness had been effectively impeached and that no effort had been made to rehabilitate him on redirect examination. *Id.* at 1349-50. In sum, the court concluded that the evidence as to both the existence and the amount of lost profits was insufficient: the evidence of lost sales was speculative, and the evidence of the plaintiff's anticipated profit on each unit that would have been sold was uncertain at best. The court accordingly remanded for a new trial solely on the issue of damages. *Id.* at 1353.

The evidence of damages presented in this case differs materially from the evidence discussed in *Kinetico*. At trial, Mr. Hall testified that "I was able to determine" that the annual load was 485,493.8 mcf based on information from the utility company regarding

each individual customer's actual 12-month history of gas usage. (Tr. 95.) In calculating the total profit margin, Mr. Hall testified that "we" looked at the annual load for each individual account for a 12-month period, "[w]e then took our margin, multiplied it times that load, and that gave us our net loss in this case, and then we of course deducted commissions from that number." (Tr. 96.) Option objected for lack of foundation because Hall was not qualified to testify as to the standard profit margin for the industry or for Volunteer. (Tr. 96.) Volunteer's counsel responded that Mr. Hall's testimony was based on his own personal knowledge of matters that came within his role as a regional manager. (Tr. 96-97.) The Court received the testimony subject to cross-examination. (Tr. 97.)

Thereafter, Mr. Hall testified as to how he determined that $1.20 was the appropriate profit margin:

> Well, we identified again the list of customers, the time frame that these customers were enrolled with Volunteer Energy. From there we look at what our selling price was. Of course, that's not all profit. We have to deduct the various expenses, which again include the delivery cost or basis points, the interstate transportation costs. We have fuel shrinking charges, so there's several variables that we have to deduct from our selling price. Once we've made those deductions, we are then left with a margin, and that margin in this case for that set group of customers was $1.20 per MCF.

(Tr. 97.)

Although Mr. Hall's testimony was received subject to cross-examination, Option essentially opted not to cross-examine Mr. Hall on the issue of damages. Option asked Mr. Hall only a few questions about the annual load, in response to which Mr. Hall confirmed that the annual load was based on historical usage. (Tr. 108-09.) Option did not attempt to

5

impeach Mr. Hall with respect to the calculation of the profit margin or his asserted personal

knowledge regarding the calculation of damages, nor did it attempt to ascertain whether Mr.

Hall could produce the background facts that supported his testimony.

In contrast to the damages testimony that was deemed insufficient in *Kinetico*, Mr.

Hall's testimony was based on first-hand knowledge of the methodology used in calculating

the damages, relied on historical usage, and was not impeached on cross-examination. The

Court is satisfied that Volunteer demonstrated its lost profits with reasonable certainty based

on competent and credible evidence. Option's motion to alter the judgment against it will

accordingly be denied.

## B.  OPTION'S COMMISSIONS

 Option has also moved to amend the judgment based on its contention that the relief

granted on Option's counterclaim is incomplete because it does not account for future

commissions due.

The Court awarded Option a judgment of $159,000 on its counterclaim for the willful

withholding of commissions. The amount of the judgment was based on a trebling of the

parties' stipulated amount of withheld commissions through March 2012.[1] (Dkt. No. 152,

Op. 16, 21.) Option contends that the stipulated amount only included withheld commissions

_____

[1]The Final Pretrial Order lists the following as an uncontroverted fact: "The amount
of accrued but unpaid commissions that is at issue in this case from February 1, 2011 through
March, 2012 is $53,000." (Dkt. No. 140, Final Pretrial Order 5, ¶ 2(i).)

through March 31, 2012, and that pursuant to the Agent Agreement, Volunteer continues to be obligated to pay Option commissions for 48 months from the termination date., i.e., through April 21, 2015.

Volunteer objects to Option's request because Option is seeking damages that it never tried to prove at trial. Volunteer notes that Option did not present any evidence as to what commissions were due between March 2012 and trial, and that Option is essentially seeking declaratory relief, a form of relief that was not requested in Option's counterclaim. In addition, Volunteer contends that Option is limited to 12 months of commissions because Option breached the Agreement.

The Court was not informed before trial that there was an issue concerning the length of time commissions were due. Option did not assert that it was owed commissions for 48 months after termination of the Agreement in its counterclaim. (Dkt. No. 130, First Am. Countercl.) The counterclaim simply states: "As a result of VESI's breach, Option has suffered in excess of $75,000.00 in damages, the amount of all unpaid commissions **due and owing to date**." (Countercl. ¶ 17 (emphasis added).) The relief requested by Option in its counterclaim was a judgment "in an amount exceeding $75,000.00, along with Option's attorneys' fees and costs." (Countercl. Count I, Wherefore Clause.) Option's counterclaim did not request declaratory relief. Neither did Option specify that it was seeking commissions for 48 months in the final pretrial order (Dkt. No. 140, Final Pretrial Order 5, ¶ 2(i)), or in its trial brief (Dkt. No. 145). The question of whether Option was owed commissions for 12 months or 48 months was never directly presented to the Court prior to

7

trial. It was only in its closing argument that Option first asserted that it was entitled to

commissions for 48 months:

> The agreement provides that upon termination by Option Energy, that
> commissions will continue to be paid for a period of 48 months. Obviously
> we're still within that 48-month period. You also heard testimony, Your
> Honor, that Volunteer Energy is in complete control of the information in
> order to be able to calculate the commissions that are owed but have not been
> paid. We know what the amount is through March of 2012. That's $53,000.
> But obviously, there are additional commissions that would have accrued since
> that time and will continue to accrue as they have an obligation to continue
> paying Option Energy for a total of 48 months, and that would be until April
> of 2015.

(Tr. 153.) Even then, Option did not request any specific relief associated with commissions

that became due after March of 2012 or that had not yet become due.[2] In its closing request

for relief on its counterclaim, Option argued as follows: "Therefore, Option Energy is not

only entitled to commissions that have been withheld, but an award of treble damages as well

under the statutory scheme, as well as costs and attorney's fees which are provided for by

both the Ohio and Michigan acts to a prevailing party." (Tr. 154.)

Although Option did not clearly present this issue to the Court, that may be because

it did not believe the issue was in contention. The Agreement contains the following

provision regarding commissions after termination of the Agreement:

> **On and after the Termination Date, Agent will continue to be paid
> commissions in full**: (1) on orders solicited by Agent prior to the Termination
> Date and accepted by the Company as New or Renewal Contracts within three

---

[2]Option's assertion that as part of its requested relief at trial it asked the Court "to
order VESI to produce the information regarding all commissions to be paid, and also to
declare that the commissions under the Agent Agreement must be paid through April 2015"
(Dkt. No. 168, Reply Br. 6) is not supported by the trial transcript.

(3) months after the Termination Date; and (2) on sales of natural gas to Agent's Customers for the remaining term of the New or Renewal Contracts or renewals thereof; and that VESI shall not be obligated to pay any commission to Agent with respect to New or Renewal Contracts after **forty-eight (48) months from the Termination Date** even if the term of any such New or Renewal Contract extends beyond that date. Notwithstanding the preceding sentence, **should there be a Termination for Cause due to Agent's material breach of this Agreement, the commissions payable to Agent shall cease twelve (12) months after the Termination Date**.

(Agreement ¶ 10 (emphasis added).)

The Agreement provides for two types of termination. Either party may terminate the Agreement for any reason whatsoever upon giving at least 60 days prior written notice.

(Agreement ¶ 9(a).) The Agreement provides for terminations for cause:

If VESI or Agent is in material default of any of its obligations and duties under the Agreement and has not cured such default within twenty (20) days after the non-defaulting party's written notice to the other specifying the particulars of such default, or if VESI or Agent files bankruptcy, goes into compulsory liquidation, or makes an assignment for the benefit of creditors, the non-defaulting party thereafter may terminate this Agreement (a "Termination for Cause") immediately upon written notice to the other party.

(Agreement ¶ 9(b).)

The 12-month limitation on commissions only applies where there has been a "Termination for Cause due to Agent's material breach of this Agreement." (Agreement ¶ 10.) In this case there was no "Termination for Cause due to Agent's material breach of this Agreement." Volunteer did not terminate the Agreement. As Mr. Hall confirmed at trial, the Agreement was terminated by Option. (Tr. 132-33.) Option terminated the Agreement pursuant to ¶ 9(b), by specifying the particulars of Volunteer's alleged breach and by giving Volunteer 20 days notice to cure. (Ex. 2.) Because Volunteer did not terminate

9

the Agreement for cause, it is clearly not entitled to rely on the twelve-month limitation on commissions.  Rather, the standard 48-month provision applies.

Volunteer did not have any opportunity to respond to this argument when it was raised at trial, but Volunteer has had an opportunity to present its arguments in response to Option's Rule 59(e) motion.  The Court finds no merit to Volunteer's contention that the twelve-month limitation applies.

Although Option did not specifically alert the Court to this issue before trial, neither does it appear that Option intentionally relinquished or abandoned its claim to commissions for 48 months following the termination of the Agreement.  It does not appear that Option made any statements that were inconsistent with its current contention that it is entitled to commissions for 48 months.  The uncontroverted fact that "[t]he amount of accrued but unpaid commissions that is at issue in this case from February 1, 2011 through March, 2012 is $53,000," can be understood to be limited to the time period and does not necessarily indicate that these are the only unpaid commissions at issue in the case.  Similarly, the parties' identification that an issue for trial was "[w]hether any amounts claimed by Option Energy for commissions are due to Option Energy or may be set-off against damages sustained by VESI," can be understood to have incorporated a claim to 48 months of commissions.  A waiver requires "'the intentional relinquishment or abandonment of a known right.'" *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006) (quoting *United States v. Osborne*, 402 F.3d 626, 630 (6th Cir. 2005)).  The Court does not find that Option has waived its argument that it is entitled to commissions for 48 months after

10

termination. Although no specific evidence on this issue was presented at trial, Volunteer

does not contend, and it does not appear to the Court, that resolution of this issue requires any

additional evidence. The Court agrees with Option that it would be a manifest injustice not

to amend the judgment to require the payment of additional commissions through April 21,

2015, pursuant to the terms of the Agreement, as they come due. Past due amounts from

March 2012 to the date of this opinion are not subject to treble damages under the Ohio Sales

Representative Commission Act, Ohio Rev. Code § 1335.11 if they are paid within 30 days

of this order.

### III.

In light of the Court's disposition of the motion to amend the judgment, Option's

motion to stay enforcement of the amended judgment until disposition on the motion to

amend will be denied as moot.

For the reasons stated herein, Option's motion to amend the judgment will be granted

in part and denied in part. To the extent Option requests the court to amend the judgment

against Option, the motion is denied. To the extent Option requests the Court to amend the

judgment to declare that Option is entitled to commissions from April 1, 2012 through April

21, 2015, the motion is granted.

An order consistent with this opinion will be entered.


Dated: <u>April 10, 2013</u>                                        /s/ Robert Holmes Bell
                                                                ROBERT HOLMES BELL
                                                                UNITED STATES DISTRICT JUDGE